RAY ARNOLD V. THE STATE.

No. 23050. Delivered March 14, 1945.
Rehearing Denied April 25, 1945.

312

The opinion states the case.

*Joe Burkett,* of San Antonio, and *L. B. Cooper,* of Cotulla, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appellant was given two years in the penitentiary on a charge of cattle theft.

The indictment returned in the court on the eleventh day of September, 1943, alleges that on or about the first day of March, 1942, Ray Arnold unlawfully and fraudulently took one head of cattle belonging to L. E. Schulze from his possession, without his consent, with the intent to deprive the owner of the value of same and to appropriate it to his own use and benefit.

When the grand jury was organized the appellant appeared with his attorney and properly filed objections to certain grand jurors, alleging that they were members of the Texas & Southwestern Cattle Raisers' Association and that representatives of said association had instituted proceedings against him in the Justice Court, charging the theft of the cow which is the subject of this prosecution. Later, when the case was called for trial, he timely objected to certain members of the petit jury for the same reason and asked that they be excused from serving in his case. The court in each instance overruled his contention and thus is presented one of the principal questions for our consideration. They will be discussed in proper order.

The prosecuting witness testified that he bought a bunch of cattle from Robert Lindau in the early part of 1941 and that the cow in question was among them. While he became the owner and took possession of the cattle they were not removed from the Lindau premises until October or November of that year, at which time this particular cow was missing. Soon there-

after he located the cow in the pasture of Joe Rogers and took her to his home. Both Joe Rogers and his father, M. E. Rogers, testified to this fact and identified the cow involved as being the same one. About the first of March, 1942, Schulze said the cow was again missing and he did not see her thereafter until she was located by a representative of the cattle raisers' association, in possession of C. C. Smith of Uvalde. Schulze identified her there as the cow he purchased from Lindau, claimed her and took possession of her. Smith testified that he had purchased the cow, with others, from the appellant. The appellant was arrested and admitted the sale of the cow to Smith but claimd her as his own. He instituted suit in the Justice Court for her possession and recovered judgment which was at the time of the trial on appeal to the District Court which, by special act of the legislature, has jurisdiction over such appeals in that county.

Appellant testifies in his own behalf claiming that he purchased the cow from a Mexican named Juan about February or March of 1941, and that she had been continuously in his possession until he sold her to Smith. Schulze was corroborated in his testimony that he purchased this particular cow from Lindau by a Mexican who had worked on the Lindau farm for a while and then for Schulze. He claimed to have known this cow at both places. If appellant had possession of the cow from February or March, 1941, until the sale was made to Smith she could not have been the cow which Schulze purchased from Lindau, and proof of such continuous possession would have cleared him of the charge of theft. The lack of the usual corroborating evidence of his possession of the cow during this period of time is conspicuous in the record. However, the issue was made and properly submitted to the jury.

Appellant presents for the first time in this court that this cause should be reversed and dismissed because the minutes do not affirmatively show that the grand jury ever returned an indictment into open court, as required by Article 394, Vernon's Ann. C.C.P. On page six of the transcript we find this notation following the indictment, "No. 1496, State of Texas vs. Ray Arnold, Cattle Theft. Filed 11th day of September, 1943. W. A. Kerr, Clerk. A True Bill: Roy E. Dossey, Foreman of Grand Jury. Amount of Bail $500." Furthermore, we are of the opinion that the question can not be raised for the first time on appeal. Note 3, Article 394, Vernon's Ann. C.C.P. See also Section 472, Branch's Ann. Penal Code from which we copy the following: "It is too late, after a plea of guilty or not guilty, to successfully except to the indictment upon the ground that the fact of its presentment was not entered upon the minutes of the court.

A defect of form can only be reached by a motion to quash." See, also, Rowlett v. State, 4 S. W. 582; Rather v. State, 9 S. W. 69, and Poe v. State, 266 S. W. 417.

The most serious question in this appeal which has attracted the attention of the writer is that which is based on the objection to the members of the jury panel who were also members of the cattle raisers' association. A similar but less serious question is presented in his objection to the grand jurors who returned the bill. These involved a construction of Article 616 of the Code of Criminal Procedure and of Section 2 of Article 362 of the same Code. I am not in accord with all of the decisions found on this subject but it does appear reasonable that the facts of this case do not disqualify the grand jurors or petit jurors in question. They were members of an association and had made contributions to the expenses which it incurs in all of its activities. Among its purposes they help to investigate cattle thefts and prosecute the guilty parties but there is no evidence that these men made a special contribution for the purpose of this particular case. In considering the question presented with reference to said grand jurors it becomes necessary to determine who are private prosecutors. In Mr. Branch's Annotated Penal Code, Sec. 544, it is stated "A private prosecutor is one who prefers an accusation against a party whom he suspects to be guilty," citing Heacock v. State, 13 Tex. Cr. App. 129, opinion by Justice Willson.

It appears from the holding in said case that under the circumstances here shown the grand jurors were not "private prosecutors" which, if so, would have disqualified them under Sec. 2 of Article 362, C.C.P. The case is also authority for the holding that the jurors were likewise not disqualified. The following cases deal with the same question. McInturf v. State, 20 Tex. Cr. R. 335; Moore v. State, 36 Tex. Cr. R. 574; McGee v. State, 37 Tex. Cr. R. 668; King v. State, 50 Tex. Cr. R. 321.

We call attention to the fact that we do not have before us the question where a juror has contributed to a fund to prosecute the individual, hence upon that point we refrain from expressing ourselves.

When the case was called for trial appellant filed a motion for continuance on the ground that there was then pending a civil action involving the ownership of the cow which appellant was accused of stealing. This motion has no merit. It has been a consistent rule in this State that the judgment of a civil court is not binding upon a criminal court, and vice versa. The judg-

ment finally rendered in the civil action would not be evidence in the trial of this case.

On his motion for a new trial complaint was made that one juror had improperly considered the indictment in the case as evidence of guilt. Such matter was not brought to this court by bill of exception and, consequently, is not given consideration. However, we call attention to Bartlett v. State, 200 S. W. 839.

We find in the record numerous bills of exception complaining of the ruling of the court in permitting the prosecution to ask leading questions of certain witnesses. We have gone into such complaints quite extensively and in view of the nature of the evidence, the parties who were testifying, and the answers which they gave, we think the court did not abuse his discretion in the matter. We call attention to the very clear discussion of leading questions in Sec. 157 and 159, Branch's Annotated Penal Code.

Several bills of exception complain of the introduction of evidence by the State over appellant's objection on the ground that such evidence was an unnecessary repetition of matter about which there was no dispute. We find that much of this matter was in dispute and the evidence was properly in rebuttal of that offered by the defense. Furthermore, it appears to be perfectly within the sound discretion of the trial court under Article 643 of the Code of Criminal Procedure which says "The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appear that it is necessary to a due administration of justice."

Another complaint on appeal is because the court refused to affirmatively instruct the jury, in accordance with appellant's request, that they could not convict in this case if they believed the cow in question was a stray cow and not one of the Lindau herd of cattle purchased by L. E. Schulze. And further, that they could not convict unless they found the cow in question to be the identical cow purchased from Robert Lindau. On this question the appellant attached to his motion for a new trial affidavits from a number of the members of the jury to the effect that they found appellant guilty, even though they did not believe the cow belonged to Schulze, because they thought he had sold a stray cow. In the first place the jurors could not thus impeach their verdict and in the second place there is no evidence that this cow was a stray at any time except in the latter part of 1941 when she was found on the premises of Mr. Rogers.

The prosecuting witness testified that she disappeared from his premises in March, 1942, but he did not say that she became a stray. We are unable to find any consistency between the jury's verdict and the affidavits which were presented on the motion for a new trial. If the cow did not belong to Schulze and they so believed they should have followed the court's instruction and found appellant not guilty. Having found him guilty it follows that they also found that the cow did belong to Schulze.

Other questions were presented in the case which in our opinion do not require a discussion. We find no error in the recrod.

The judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant again insists that the trial court should have given his requested instruction relative to whether or not the cow in question, alleged to have been stolen, was a stray cow, and therefore could not be the cow purchased from Lindau, and in the possession of Mr. Schulze. We do not think the testimony called for such an instruction. Appellant testified that this cow was purchased by him from a Mexican named Juan, and she was the same cow found in the possession of Mr. Smith. This cow had certain color markings and brands, and horns, one of them being a slipped or crumpled horn. The only stray cow mentioned in the testimony was a mulley or no horned cow. Appellant's testimony, as well as the State's testimony, leaves no confusion as to the cow around which this prosecution is based.

The bills of exceptions relating to the asking of leading questions to certain witnesses do not impress us with any serious import. Many of these questions complained of were possibly repetition of testimony previously given by the witness, but possibly gone into at more detail, after certain statements contradictory thereof had been offered by appellant. These statements could not have been aught but a clarification of what the witness had previously referred to in less exact terms than desired by the State in endeavoring to rebut some of appellant's testimony.

The appellant offered the testimony of two certain jurors who testified on the motion for a new trial that they considered the fact of an indictment, as some evidence of guilt. It is also shown, however, that each juror was emphatic in the statement

that, although he considered the indictment as a circumstance of guilt, he based his conviction solely upon the evidence that came from the witness stand; one of the jurors, Mr. Wiest, said that the proof that convinced him as to guilt came from the witness stand. Mr. Gebert, the other juror, also said that he considered the indictment as an evidence of guilt, yet he based his verdict upon the testimony that was given from the witness stand; when taken on the jury he had no opinion, and voted appellant guilty beyond a reasonable doubt from the evidence that came from the witness stand. There was further testimony in which the juror was attempting to impeach his own verdict by saying that he was still unconvinced as to who owned the cow alleged to have been stolen, but our decisions have long had unanimity in holding that a juror, having once agreed to a verdict of guilt, cannot come in thereafter and be allowed to impeach that verdict by saying that he did not believe in the guilt of the accused. See Branch's P. C., pages 296-297. To thus allow an impeachment of verdict would result in confusion, and open the way for mistrials in many cases, and unending litigations.

The statement of the two jurors that they considered the indictment as a circumstance of guilt finds an association with the statement in each instance that they only considered the evidence alone that came from the witness stand. Of course the indictment was present at the trial, and surely read to the jury, and surely taken with them in their deliberations in the jury room, and while same is not to be taken as a circumstance of guilt, nevertheless a mind untrained in legal parlance and procedure would necessarily give some prominence to an indictment; yet the same rule that prohibits the impeachment of his verdict by a juror operates herein and will not allow the juror to say what animated his mind to the detriment of his verdict properly returned into open court.

We have said in Weatherford v. State, 31 Tex. Cr. R. 530, 21 S. W. 251, that:

"Upon grounds of public policy, courts have almost universally agreed upon the rule, that no affidavit, deposition, or other sworn statement of a juror, will be received to impeach a verdict, or to explain it, or to show on what grounds it was rendered (2 Thompson's Trials, section 2618, and authorities cited), and the wisdom of the rule needs no argument to support it."

Also see Pilot v. State, 38 Tex. Cr. R. 515; Montgomery v. State, 13 Tex. App. 74; Bacon v. State, 61 Tex. Cr. R. 206. Our Supreme Court, in the year 1865, in Johnson v. State, 27 Texas,

758, said: "No case has yet occurred in this State wherein the courts have tolerated such affidavits * * * to impeach their verdict. If ever admissible they can only be allowed in an extreme case and under an impertative necessity for the accomplishment of justice." The rule rests upon the obvious ground that were it otherwise few verdicts would escape attacks from jurors under influences that would be brought to bear upon them after their discharge by the court.

Appellant insists that the statements of such two jurors was the reception of further evidence in their jury room, and therefore comes under subdivision 7 of Art. 753, C.C.P. We are not in accord with this contention, but are impressed with the idea that such statements should be classified as an attempt to impeach their own verdict, and such proceedings cannot be allowed.

The facts merely show that appellant sold a cow that Mr. Schulze and one other said belonged to Schulze. Appellant, when his right to such cow was challenged, claimed to have purchased her from a Mexican named Juan, not knowing she was stolen. The trial court placed upon the State the burden of disproving the reasonableness of such explanation, and the jury's verdict seems to indicate that the State was successful in so doing.

The motion is therefore overruled.